Filed 7/1/14 Sheen v. Sheen CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| CHARLES SHEEN et al., | B243847 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BP092979) |
| v. | |
| ANTHONY SHEEN, JR. as Trustee etc., | |
| NEIL GIELEGHAM et al., | |
| Objectors and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County. Michael Beckloff, Judge. Reversed and remanded.

Law Offices of Fritzie Galliani, Fritzie Galliani and Evan D. Marshall for Plaintiffs and Appellants.

No appearance for Objectors and Respondents.

_____

A subset of the beneficiaries under a living trust filed a motion for attorney's fees asserting the equity-based "common fund doctrine." They claimed that litigation they pursued resulted in a judgment recovering the trust's main assets from a wrongdoer, creating a common fund benefiting all of the trust's beneficiaries, thus justifying an award of attorney's fees surcharged against the trust's assets. Over the course of nearly six years, one judge of the probate court granted the motion. A second judge then vacated the order granting the motion for procedural reasons and placed a refiled motion off calendar pending resolution of other matters. Yet a third probate judge denied a once-again refiled motion. The common-fund beneficiaries challenge the third and last order denying their motion for attorney's fees. We reverse the order and remand for further proceedings.

## FACTS

### *The Beginning*

In early 1997, Quinlock Sheen (hereafter Ms. Sheen) declared and established the Quinlock Sheen Living Trust. The trust provided for the distribution of its assets, on Ms. Sheen's death, in equal shares to her six adult children, and, in the event a child had died, to the issue of the deceased child.[1]

In 2001, Ms. Sheen, as trustee, deeded certain trust assets, including a house and adjacent duplex on South Spaulding Avenue in Los Angeles, and other real property in Missouri, to one of her children, Dolores Sheen. After the transfers, Dolores encumbered the Spaulding Avenue duplex with two loans secured by deeds of trust.

Ms. Sheen died in 2002.

### *The Foundational Probate Court Proceeding and Appeal*

In July 2005, Ms. Sheen's daughter Eugenia Ringgold, who was both a beneficiary of the trust was also the trustee of the trust, joined other beneficiaries of the trust, namely, Charles Sheen and Deryl Gaylord (grandchildren; children of a predeceased son, Robert)

---

[1] The six children identified in the trust instrument were listed respectively: Herbert Sheen, Eugenia (Sheen) Ringgold, Dolores (Sheen) Blunt, Robert Sheen, Mildred Imelda Sheen and Carol (Sheen) Hersha.

and Derek Hersha (grandchild; son of a predeceased daughter, Carol), in filing a petition in the probate court under Probate Code section 850 to restore the trust assets that Ms. Sheen had transferred to Dolores Sheen in 2001.[2] The section 850 proceeding involved allegations that Ms. Sheen was not of sound mind when she deeded the real properties to Dolores Sheen, and that Ms. Sheen had acted under Dolores Sheen's undue influence. Attorney Fritzie Galliani represented Eugenia Ringgold and the other beneficiaries in the section 850 proceeding in the probate court.

Eugenia Ringgold died April 2006; she also had a living trust in place when she died. Eugenia Ringgold's living trust generated parallel litigation over who controlled her living trust, which may have been in line to receive assets distributed out of Ms. Sheen's living trust. Tracy Sheen (Eugenia Sheen's niece; and the daughter of Anthony Sheen, one of the beneficiary's under Ms Sheen's trust) was the named trustee of Eugenia Ringgold's living trust. Attorney Fritzie Galliani was also involved in the Eugenia Ringgold living trust litigation.

In any event, after Eugenia Ringgold died, the three remaining beneficiaries and petitioners identified above continued prosecuting the section 850 proceeding through trial. In May 2006, the trial court (Hon. Judith Chirlin) entered judgment against Dolores Sheen, and in favor of the beneficiaries, or, perhaps more accurately, favoring the Sheen living trust. The judgment set aside the real property deeds from Ms. Sheen to Dolores Sheen, and also ordered that all of Ms. Sheen's personal property be restored to the trust. The judgment awarded $100,000 damages against Dolores Sheen for losses caused by a sale of the Missouri real property to a bona fide third-party, and for other monies that she had received from the proceeds of a mortgage against the duplex property on Spaulding Avenue.

Dolores Sheen pursued an appeal. On appeal, the Galliani law office, by attorney Leslie Howell, and joined by attorney Evan Marshall, represented the beneficiaries. Our court eventually affirmed the judgment in the section 850 proceeding, with the

---

[2]     All further undesignated section references are to the Probate Code.

exception of the probate court's denial of an award of statutory "penalty damages" (see § 859) as to Dolores Sheen. (See *In re Estate of Sheen* (May 15, 2008, B192495 [nonpub. opn.].) We remanded the section 850 proceeding for reconsideration of the beneficiaries' claim for penalty damages against Dolores Sheen. (*Ibid*.)

### *The Initial Attorney Fees Motions*

In August 2006, shortly after the trial court entered judgment in the section 850 proceeding, the beneficiaries who brought the proceeding (Charles Sheen, Derek Hersha, and Deryl Gaylord) filed a motion for an order awarding attorney fees and costs measured as a percentage of "the amount recovered for the common fund," pursuant to the court's "equitable power under the common fund theory."[3] The motion was made on the ground that an award of attorneys fees to the Law Office of Fritzie Galliani, for legal work performed by attorney Leslie Howell, the trial lawyer for the beneficiaries in the section 850 proceeding, was justified and proper because the proceeding had "resulted in the creation or preservation of a common fund to the benefit of persons besides the [three beneficiaries], consisting of numerous [other] beneficiaries of the Quinlock K. Sheen Living Trust." The motion sought 40 percent of the value of the assets recovered based on contingency fee retainer agreements between the beneficiaries and the lawyers representing the beneficiaries.[4]

---

[3]    As explained in *Consumer Cause, Inc. v. Mrs. Gooch's Natural Foods Markets, Inc*. (2005) 127 Cal.App.4th 387, 397, the common fund doctrine rests on the principle that one who expends attorney's fees in winning a suit that creates a fund from which others derive benefit may require those passive beneficiaries to bear a share of the fees. (See also 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 249, pp. 825-827, and cases cited.)

[4]    The contract terms between the beneficiaries and the lawyers are, of course, a matter between them. Under the common fund doctrine, a court exercises its equitable power to award attorney's fees that are in the interest of justice. The initial motion for attorney's fees only spoke as to attorney Galliani's law office, and not as to attorney Marshall (who worked for beneficiaries on appeal) inasmuch as Dolores Sheen's appeal had not yet been completed.

The beneficiaries who won the claims against Dolores Sheen at trial of the section 850 petition, on behalf of and in favor of the Sheen living trust, wanted their attorney's fees paid out of trust assets upon the sale of the real and personal property recovered through their efforts in the section 850 proceeding. As the beneficiaries stated: they sought "40% of the sales proceeds of the sales proceeds of the real property, personal property, rents and damages" recovered for the trust. In short, the beneficiaries wanted a judicially-recognized surcharge or lien upon trust assets to pay attorney's fees incurred to their attorneys. Further, they wanted the attorney's fees lien to be "made senior to other claims against the [trust]." (Citing *Winslow v. Harold G. Ferguson Corp*. (1944) 25 Cal.2d 274.)

The trustee, then Anthony Sheen (who had succeeded Eugina Ringgold, who died shortly before trial of the section 850 petition), on behalf of the trust, opposed the motion for common fund attorney fees. Trustee Anthony Sheen expressly conceded that the Galliani office and attorney Howell were entitled to attorney fees, but argued they should not be awarded 40 percent of the trust assets, but only fees as to the clients who had retained them (i.e., Charles Sheen, Derek Hersha, and Deryl Gaylord), and that such fees should only be paid after all accountings as to the trust were completed, and only as an ordinary creditor. Attorney Gregory Cole represented trustee Anthony Sheen.

In October 2006, the trial court (Hon. Aviva Bobb)[5] granted the beneficiaries' motion for attorney fees. In her October 2006 order, Judge Bobb fixed the amount of attorney's fees as follows: " . . . 40% of the proceeds of the entire judgment entered on May 16, 2006 . . . ." In November 2006, trustee Anthony Sheen filed a motion to vacate the attorney's fee award for various procedural errors.

In January 2007, Judge Chirlin entered a written order vacating the attorney fee award upon a finding that there had been a "failure of complete and proper service" of the attorney fee motion.

---

[5] It is unclear to this court why Judge Bobb entered the order granting attorney fees on the judgment in the section 850 proceeding when Judge Chirlin had presided over trial of the section 850 petition.

5

In March 2007, the beneficiaries re-filed their motion for attorney fees based on the common fund doctrine.

*Further Litigation and Appeals*

As noted above, the original trustee, Eugenia Ringgold, died in April 2006, shortly before trial of the section 850 petition summarized above. Pursuant to the trust, Anthony Sheen, succeeded as the trustee of the trust.

"From virtually the outset" of Anthony Sheen's trusteeship, he and the attorneys then representing the beneficiaries in the section 850 proceedings, including the appeal, "pursued adverse proceedings against one another." (*Sheen v. Galliani* (Feb. 24, 2010, B206086 [nonpub. opn.].) These included a petition in June 2006 by the beneficiaries to remove Anthony Sheen as trustee, a motion in August 2006 by trustee Anthony Sheen to disqualify the attorneys who were representing the beneficiaries (i.e., Galliani, Howell and Marshall), and an application in October 2006 by trustee Anthony Sheen for an order directing the attorneys for the beneficiaries to turn over to him their "case files" from the section 850 proceeding, including the then-pending appeal from the final judgment in the proceeding.

In October 2006, Judge Bobb entered an order denying trustee Anthony Sheen's motion to disqualify the attorneys for the beneficiaries in the section 850 proceeding.[6] Trustee Anthony Sheen filed an appeal. We eventually dismissed the appeal as moot in light of the fact that the attorneys who represented the beneficiaries voluntarily substituted out of their representation while the appeal was pending. (See *Sheen v. Sheen* (June 2, 2009, B196060, as modified on July 2, 2009 [nonpub. opn.].)

In April 2007, trustee Anthony Sheen (represented by attorney Cole and now assisted by attorney Neil Gieleghem) filed a complaint for legal malpractice against attorney Leslie Howell and the Galliani law office, the trial lawyers who represented the beneficiaries in the successful section 850 proceeding summarized above. (See L.A. Sup. Ct., No. BC370267.)

---

[6] Again, it is unclear to this court why Judge Bobb was addressing matters in the section 850 proceeding in October 2006.

In May 2007, Judge Chirlin entered a case status or management order in the section 850 proceeding. The order addressed several matters; among its many provisions the order took the beneficiaries' renewed motion for common fund attorney fees off calendar until several other pending matters were resolved.

In June 2007, attorney Howell and the Galliani law office substituted out as the beneficiaries' attorney of record in the section 850 proceeding.

In July 2007, Judge Chirlin entered another order, in what appears to be a case management order. The July 2007 order concerned matters such as having property deeds signed and delivered, sales of properties arranged, and disbursement of trust funds to pay for the costs of the property sales and for regular maintenance of the properties in the Sheen living trust. The order provided that no other disbursements would be made (implicitly encompassing the matter of attorney fees) from the trust without further court approval.

At a status conference in October 2007, Judge Chirlin issued an order to show cause why attorneys Galliani, Marc Hankin, and Evan Marshall (who then had been and or were still representing the beneficiaries in the section 850 proceedings), including the then-pending appeal should be barred from further participating in the proceedings. The OSC also was addressed to whether or not attorneys Galliani, Hankin, and Marshall should turn over their legal files to trustee Anthony Sheen. This resulted in a further slew of briefing.

In December 2007, Judge Chirlin entered an order directing attorneys Galliani, Hankin and Marshall to produce all records and files pertaining to the section 850 proceedings, including the appeal from the judgment against Dolores Sheen. An appeal ensued from the "file turnover" order. In early 2010, we modified Judge Chirlin's order, and affirmed. (See *Sheen v. Galliani* (Feb. 24, 2010, B206086 [nonpub. opn.].) Our disposition read: "The order of December 24, 2007 is modified to provide that the production shall be to [trustee] Anthony Sheen and his attorney only, and shall be limited to Howell's and Galliani's files and papers that were prepared on or before April 30, 2006. As so modified, the order is affirmed. . . ." (*Ibid*.)

In July 2008, trustee Anthony Sheen filed renewed motions to disqualify attorney Howell and the Galliani law office as the beneficiaries' attorney of record in the section 850 proceeding. The beneficiaries opposed the motion. None of this makes sense to our court inasmuch as Howell/Galliani no longer represented anyone in the section 850 proceeding as of July 2008.

In September 2008, Hon. Mitchell Beckloff issued an order giving approval to attorneys Cole and Gieleghem, the attorneys then representing trustee Anthony Sheen in the section 850 proceeding, to file a motion to be substituted out of the litigation.[7] In November 2008, Judge Beckloff entered orders granting the motions by attorneys Cole and Gieleghem to be relieved as counsel for trustee Anthony Sheen.

In December 2008, Judge Beckloff denied trustee Anthony Sheen's renewed motion to disqualify the attorneys for the beneficiaries, finding that such a motion had been previously denied and was then on appeal, and that trustee Anthony Sheen had presented no new facts justifying a different result on his renewed motion.

In January 2009, the former attorneys for trustee Anthony Sheen, that is, attorneys Cole and Gieleghem, filed a so-called "collection action" seeking to recover about $800,000 in attorney fees allegedly owed by the trust/trustee. (See L.A. Super. Ct., no. LC084204.) The collection action was assigned to Judge Beckloff, who then also had the probate case on the beneficiaries' section 850 petition. At some point after the collection action was filed, trustee Anthony Sheen ostensibly made an offer pursuant to Code of Civil Procedure section 998 to settle the collection action filed by attorneys Cole and Gieleghem. Trustee Sheen offered to settle the action for $500,000. On June 3, 2010, Judge Beckloff entered a judgment in the collection action in accord with the settlement offer under Code of Civil Procedure section 998. The judgment provided for a prompt, initial payment of $50,000; a further payment of $200,000 after the close of escrow for

---

**7** Attorneys Cole and Gieleghem apparently claimed they were not being paid, or there was a risk that they would not be paid, for their legal services, and that this was the situation because the actions of attorneys for the beneficiaries were exhausting the assets of Sheen living trust.

8

the sale of the duplex property on Spaulding Avenue, and a final payment of $250,000 on the trial court's approval of an accounting in the Sheen living trust probate litigation. The judgment provided that, in connection with any accounting, trustee Anthony Sheen would "take the position" that the fees and costs sought by attorneys Gieleghem and Cole were reasonable.[8]

Meanwhile, during a period of time after the commencement of the appeal from Judge Chirlin's "file turnover" order (see *Sheen v. Galliani*, *supra*, B206086), trustee Anthony Sheen sought to enforce the "file turnover" order, and the attorneys affected by the order claimed that an automatic stay existed. Alternatively, they offered to deposit their legal files with the trial court pending resolution on appeal.

At some point during all of this, Judge Chirlin apparently recused herself. In March 2009, Judge Beckloff appointed a receiver to hold the files. The receiver ultimately ran up a bill of $36,000. When the court set an order to show cause as to the allocation of trust assets for the receiver's fees, attorneys Gieleghem and Cole (who were then still representing trustee Anthony Sheen) told the court that they had attached everything in the trust with their judgment in their parallel "collection action," and that there were no assets left in the Sheen living trust even to pay administrative expenses.

In February 2012, trustee Anthony Sheen (represented by new counsel, attorney Reginald Mason) filed a series of appeals from the collection action, including an attack on the judgment entered pursuant to Code of Civil Procedure section 998. Those appeals were dismissed by Division Four of our Court after appellants failed to file a timely opening brief. (*Cole v. Sheen*, B239290.)

---

[8]     While the $500,000 judgment entered in the "collection action" against the trust/trustee and in favor of attorneys Cole and Gieleghem seems to be pursuant to section 998, the validity of that judgment is not before us on the appellants' current appeal. While we have concerns whether the payment of attorney's fees should have been by way of a separate civil "collection action," as opposed to a matter of administration of the trust in the probate court proceedings, the appeal before us today only concerns Judge Beckloff's order of July 2012 denying the appellants' refiled motion for attorney's fees.

9

***The Renewed Motion for Attorney's Fees and the Current Appeal***

In April 2012, the beneficiaries in the original 2006 section 850 proceeding as to Dolores Sheen to recover trust property — i.e., Charles Sheen, Derek Hersha and Deryl Gaylord — and their former attorneys in the proceeding — i.e., the Law office of Fritzie Galliani and Evan Marshall — refiled a motion for attorney fees based on either or both (1) the common fund doctrine, and (2) contractual attorney fees assertedly owed under contingency fee retainer agreements. The motion sought attorney fees for work performed in both the trial court and on appeal which resulted in recovery of the trust properties. Basically, the motion was a refiling of the motion for "common fund" attorney fees that had been granted by Judge Bobb in October 2006, but which was later vacated on service/notice grounds by Judge Chirlin in October 2007.

The refiled attorney's fee motion essentially sought reinstatement of Judge Bobb's "common fund" attorney fee order issued in October 2006 which had awarded 40 percent of the value of the property recovered for the Sheen living trust by the beneficiaries' successful 2006 proceeding under section 850 (and appeal). Alternatively, the motion sought a sum specific amount of $720,000, based on contingency fee retainer agreements between the beneficiaries and attorneys Galliani and Marshall, and the recovery in the section 850 proceeding. Further, the motion sought the attorney fees to be awarded *nunc pro tunc* as of the time of Judge Bobb's order in 2006, and for a declaration that the Law Offices of Fritzie Galliani, and Evan Marshall, had a "senior lien" for their attorney fees, implicitly meaning in front of attorneys Neil Gieleghem and Gregory Cole by virtue of their 2010 judgment in their "collection action" against the Sheen living trust. Attorneys Galliani and Marshall also sought imposition of a constructive trust over the assets in the Sheen living trust to accomplish payment of their fees with priority over other attorney fees claims.

The motion for an award of attorney's fees also explained that attorneys Galliani and Marshall had offered to enter into an agreement with the trustee, still Anthony Sheen, under which Galliani and Marshall would share half of any funds they recovered after costs. As we understand matters, attorneys Galliani and Marshall have offered to share

any money — obtained by virtue of a priority over attorneys Cole and Gieleghem — with all of the beneficiaries of the Sheen living trust (except for Dolores Sheen, the wrongdoer). Further, because the trust assets may have been sold, and attorneys Cole and Gieleghem may have already gotten their money under the judgment in their "collection action," this will mean in the end that attorneys Cole and Gieleghem will have to give back monies in order that attorney's fees to attorneys Galliani and Marshall are awarded.

Upon the refiling of the motion for an award of attorney's fees, attorney Neil Gieleghem leveled an accusation that Charles Sheen (one of the original section 850 petitioners, *ante*) of "confront[ing]" attorney Cole outside the Spaulding Avenue duplex property.[9] Gieleghem also leveled accusations that attorneys Galliani and Marshall were "colluding" with the beneficiaries of the Sheen living trust in that the attorneys had offered to share a portion of their recovery of attorney's fess with the beneficiaries. Gieleghem accused attorneys Galliani and Marshall and the beneficiaries of the trust of wrongfully trying to take away money that rightfully belonged to attorneys Gieleghem and Cole. In this vein, Gieleghem demanded that attorneys Galliani and Marshall, and trustee Anthony Sheen's new lawyer, Reginald Mason, immediately produce documents concerning the alleged "collusion," and to submit to depositions.

Gieleghem also served notices of deposition for attorneys Galliani, Marshall and Mason. Later, Gieleghem dropped deposition subpoenas at the offices of attorneys Galliani and Marshall. In May 2012, Gieleghem sent an e-mail to trustee Anthony Sheen's attorney (Mason) threatening "potential, very severe consequences" for trustee Anthony Sheen should the then-pending motion for attorney's fees be granted.

On May 16, 2012, the parties argued the refiled motion for attorney's fees to Judge Beckloff, and he took the matter under submission. On July 13, 2012, Judge Beckloff denied any attorney's fees or costs at all on the ground that a "common fund" award was inappropriate because attorneys Galliani and Marshall had "relied on trust property values that [were] six years old." More specifically, Judge Beckloff ruled that "it would

---

[9] In a later declaration, Charles Sheen testified that he had not been in California at any time during April 2012.

11

be inequitable to the [panoply of ] trust beneficiaries to award [attorney's fees as] a percentage of the trust corpus based on property values from six years ago." Further, Judge Beckloff found that the refiled motion for attorney's fees was a wholly "new motion," not a "renewed motion."  As new motion, Judge Beckloff found it was untimely under California Rules of Court, rule 3.1702.1(b)(1) [motion for attorney's fees in a civil case must be filed in the time for filing a notice of appeal].)  Having rejected any attorney's fees and costs, Judge Beckloff ruled it was unnecessary to address the lien priority issues.

The original common-funding beneficiaries Charles Sheen, Derek Hersha and Deryl Gaylord, joined by their former attorneys Gilliani and Marshall who represented them in the section 850 proceedings and the subsequent appeal, then filed a notice of appeal from Judge Beckloff's July 2012 order denying the refiled motion for attorney's fees (with lien priority).  We hereafter refer to these beneficiaries and these attorneys collectively as the appellants.

## DISCUSSION

### I.        Framework for Appeal

The appellants' first contention is that the trial court's order denying their refiled motion for attorney's fees under the common fund doctrine must be reversed because the order was "abusive," "disingenuous" and "preposterous" insofar as it was predicated on the court's conclusion that fixing the amount of attorney's fees (whether calculated on a contingency percentage under an attorney retainer agreement or assessed on a fairness basis under the common fund doctrine or part of both approaches) based on the value of trust property at the time it was recovered in 2006 "would be inequitable" in 2012. No respondent's brief has been filed.

To address any issue on this appeal, we start with some very broad predicates. First, it is undisputed that there are, or were, trust assets to begin with only because of the appellants' efforts on their section 850 petition against Dolores Sheen, including securing a judgment directing her to return trust assets and then winning the subsequent appeal from that order.

12

Second, the appellants should have been awarded — as a matter of equity — *some* measure of attorney's fees, with those fees surcharged against the trust assets that were recovered. (See generally 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 249 [discussing common fund doctrine] ;and see also *Estate of Reade* (1948) 31 Cal.2d 669, 671-672 [common fund doctrine extended to probate proceedings].) We see nothing in the record to suggest that anybody, at any time, ever presented a meaningful claim or argument that wholly denying attorney's fees was appropriate. Indeed, trustee Anthony Sheen acknowledged in his opposition to the initial motion for attorney's fees filed way back in 2006 that an award of attorney's fees to the beneficiaries was appropriate under the common fund doctrine; his only challenge was to manner of calculating the *amount* of fees to be awarded. In 2006, he challenged the request for an award of 40 percent of the total value of assets recovered, and argued, instead, that the beneficiaries should be awarded at most 40 percent of the value of their share of the trust assets recovered. And the position of the respondents in the trial court (i.e., attorneys Cole and Gieleghem) basically came down to this statement which may be found in their response to the receiver's motion for his fees: "Judgment creditors do not care what, if anything the Receiver and/or Objectors are paid — *provided they are not paid with Judgment Creditors' money*, i.e., the trust assets/monies subject to the attachment order [from the Judgment Creditors' collection action]." (Italics in original.)

This brings us to the third predicate in this case, namely, that the dominant issue in this case, both in the trial court and on this appeal, is a question of priority of liens against the trust's assets to secure payment of attorney's fees. That is, this appeal is essentially a fight between two sets of attorneys over which one of them is going to take away the trust's assets first. With this framework of predicates in place, we turn to the appellants' appeal.

## II.    The Motion was Timely

We first address the procedural issue of whether the appellants' motion for attorney's fees under the common fund doctrine was untimely. If this procedural bar is not overcome by the appellants, all other issues as to the propriety an award of attorney's

13

fees need not be addressed. The appellants contend that Judge Beckloff erred in ruling that their refiled motion for attorney's fees under the common fund was untimely under California Rules of Court, rule 3.1702.1(b)(1). We agree.

Rule 3.1702.1(a) provides: "Except as otherwise provided by statute, this rule applies in *civil cases* to claims for *statutory* attorney's fees and claims for attorney's fees *provided for in a contract*. . . . (Emphasis added.) By its plain language, rule 3.1702.1 applies in a "civil case" involving a statutory scheme, and the statutes allow for an award of attorney's fees, for example, litigation under the Fair Employment and Housing Act or FEHA (Govt. Code, § 12900 et seq.). It also applies in a "civil case" involving a "contract," and the contract includes an attorney's fee provision, for example, when a contract provides that, in the event of litigation on the contract, the prevailing party in the litigation is entitled to attorney's fees. The current case involves a probate proceeding to recover trust assets, and the equity-based common fund doctrine. This type of case does not fall within the ambit of a "civil case" involving a statutory or contractual right to attorney's fees.

*Hollaway v. Edwards* (1998) 68 Cal.App.4th 94 is in accord with this view. There, the court correctly explained that attorney's fees in probate court litigation "are subject to concerns sufficiently unique . . . to distinguish them from fees generated in ordinary civil litigation. . . . As the Supreme Court noted in *Estate of Trynin* (1989) 49 Cal.3d 868, 873 . . . , 'An attorney who has rendered services to an estate's representative may obtain compensation by petitioning the superior court sitting in probate for an order requiring the representative to make payment to the attorney out of the estate.' In addition, an attorney who performs services in connection with a trust may well wish (say, for client relations purposes) to recover attorney fees first by way of request for voluntary payment by the trust before pursuing court intervention . . . . Superimposing rule [rule 3.1702.1(b)(1)]'s time limitations likely would complicate, and possibly frustrate, such salutary nonlitigious efforts.

14

"Moreover, the probate court enjoys broad equitable powers over the trusts within its jurisdiction. (*Estate of Ivy* (1994) 22 Cal.App.4th 873, 883-885 . . . [court exercises equitable powers pursuant to trust supervision to exempt prevailing beneficiaries from provisions of Code of Civil Procedure which would undermine their recovery of attorney fees].) This discretion derives not simply from judicial gloss, but from the Probate Code itself. For example, although Code of Civil Procedure section 1032, subdivision (b) entitles a prevailing party in ordinary civil litigation to costs as a matter of right, the probate court retains discretion to decide not only *whether* costs should be paid, but also, if they are awarded, who will pay and who recover them. (Prob. Code, § 1002.) We are loath to circumscribe the probate court's discretion by importing California Rules of Court, rule [3.1702.1(b)(1)]'s strict time limits." (*Hollaway v. Edwards, supra,* 68 Cal.App.4th at pp. 98-99.)

In accord with the statutory language, and the sentiments of the case law, we agree with the appellants that Judge Beckloff erred in applying California Rules of Court, rule 3.1702.1(b)(1), in the context of their motion for attorney's fees under the common fund doctrine.

### III.    Denial of Attorney's Fees was Error

We also agree with the appellants that Judge Beckloff erred in denying an award of *any* attorney's fees on the ground that the value of the trust assets recovered in the section 850 had likely changed between 2006 and 2012. First, not one of the beneficiaries under the trust, nor attorneys Cole or Gieleghem, ever claimed that the 2006 value of the Spaulding Avenue properties was not a relevant basis for calculating an attorney's fee award under the common fund doctrine. Second, and perhaps more importantly, while the valuation of assets issue may have made a calculation of an appropriate amount of attorney's fees more difficult, the valuation of assets issue should not have served as basis for denying any award of attorney's fees. As noted above, it is undisputed that the current case is of a type that fits the common fund doctrine model — a common fund for the benefit of all of the beneficiaries of the trust was created by the

15

efforts of the subset of beneficiaries who successfully litigated the section 850 proceeding.

In *Estate of Stauffer* (1959) 53 Cal.2d 124, 132, the Supreme Court explained that an award of attorney's fees under the equitable common fund doctrine should accomplish the following goals: "fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful." It would not appear that these principles necessarily correspond with concepts such as the "lodestar" measure of attorney's fees, or a straight-percentage contingency fee measure of attorney's fees. On the contrary, under the common fund doctrine, an award of attorney's fees surcharged against a common fund necessarily entails a sliding scale of "fairness" in that a surcharge against a common fund to pay such attorney's fees will incrementally decrease the pay out to those entitled to a share of a common fund with each incremental increase in the amount of attorney's fees awarded. The trial court was not "fair" to anybody by focusing on the valuation of assets issue to deny attorney's fees completely where it is undisputed that work was done to benefit a common fund.

This is not to say that Judge Beckloff was required to accept the 2006 valuations of the Spaulding Avenue properties in fixing an appropriate amount of attorney's fees under the common fund doctrine. By the time the refiled motion for attorney's fees came before him in 2012, Judge Beckloff already had information that the Spaulding Avenue duplex was in escrow to be sold to a third-party for a "projected 'net' to the trust" of "around $600,000 . . . ." This information came from attorneys Cole and Gieleghem in their response to the receiver's motion for his fees. Thus, when Judge Beckloff addressed the refiled motion for attorney's fees in 2012, it is inescapable that the litigation by the common-funding beneficiaries had created a common fund with a value of "around"

16

$600,000, at least.  In addition, the common fund attorney's fees could have been awarded some portion thereof, as "fair" to the beneficiaries who created the trust's common fund and to the remaining "passive" beneficiaries of the trust.

However, it is not our role to exercise equity powers to declare a sum certain amount of attorney's fees to be awarded and surcharged against the trust assets under the common fund doctrine for the first time on appeal.  We leave that determination to Judge Beckloff on remand.  We find only that a complete denial of attorney's fees was improper.

*Lien Priority*

The appellants contend that — as to attorney's fees awarded and to be surcharged against the trust assets under the common fund doctrine — they should have a "senior" lien.  We note that *Winslow v. Harold G. Ferguson Corp*. (1944) 125 Cal.2d 274 (*Winslow*) may or may not support such a conclusion.  But this too was not addressed by Judge Beckloff below because he outright denied the award of attorney's fees.  We leave the resolution of this question to Judge Beckloff in the first instance on remand.

IV.     **Constructive Trust**

Appellants contend they were "entitled" to a constructive trust — apparently they mean a constructive trust imposed as to attorneys Cole and Gieleghem — in order to give practical effect to the appellants' "senior" right to attorney's fees surcharged against the trust assets under the common fund doctrine.  This also was not addressed by Judge Beckloff, given the nature of his decision.  We express no view on what procedural avenue, if any, would allow the appellants to give practical effect to their senior claim for attorney's fees surcharged against the trust assets.  Once again, we leave that decision to Judge Beckloff on remand.

V.      **The Judgment in the Collection Action**

In a series of arguments, which include a number of inappropriate, ad hominem attacks on Judge Beckloff, appellants challenge the validity of the judgment entered in favor of attorneys Cole and Gieleghem in their collection action.  We summarily dismiss

these arguments because the appeal before us today is not taken from the judgment in the collection action.

## VI.    Motions on Appeal

The appellants have filed a motion in our court seeking sanctions against attorneys Cole and Gieleghem.  The motion is denied because neither attorney Cole nor attorney Gieleghem has undertaken any action in our court justifying they be sanctioned.

The appellants have filed a motion in our court for a "determination" on certain "jurisdictional objections" to appellate review.  The motion is denied because neither attorney Cole nor attorney Gieleghem filed anything in our court challenging our appellate jurisdiction.  To the extent they claimed to the appellants, in an exchange of letters, that such jurisdictional bars existed, those extra-judicial claims are not our concern.

Finally, we note that attorney Cole has filed a "joinder" in the respondent's brief filed by attorney Gieleghem.  Because attorney Gieleghem filed no such brief, we strike attorney Cole's "joinder" as a meaningless nullity.  This case is addressed pursuant to the procedures of California Rules of Court, rule 8.220(a)(2) [no respondent's brief filed].

## DISPOSITION

The trial court's order dated July 2012, is reversed and remanded to the trial court for further proceedings in accord with this opinion.  Appellants are awarded costs on appeal.


                                                  BIGELOW, P. J.

We concur:



            RUBIN, J.                    KUSSMAN, J. [*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18